Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
280 South Beverly Drive
Beverly Hills, CA 90212
Tel.:   (917) 471-1894
Fax:   (310) 496-3176
Email:      astraus@milberg.com

*Attorneys for Plaintiff*
*Additional Counsel on Signature*
*Page*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE VITIOSUS, DEBRA FOLEY, and RACHEL LUMBRA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALANI NUTRITION, LLC,<br><br>Defendant. | Case No.: __'21 CV2048 MMA MDD__<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Andres Vitiosus, Debra Foley, and Rachel Lumbra (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring the following Class Action Complaint against Defendant Alani Nutrition, LLC ("Defendant"):

## NATURE OF THE ACTION

1.      This is a civil class action brought individually by Plaintiffs on behalf of consumers who purchased Defendant's FIT SNACKS Whey Protein Baked Bar products, including but not limited to, those in any of the following flavors: Chocolate Cake, Peanut Butter Cup, Peanut Butter Crisp, Cookies and Cream, and Munchies, Fruity Cereal, Confetti Cake, Blueberry Muffin, or any other limited, discontinued, or seasonal flavors (the "Products").

2.      Defendant misleads consumers into thinking that its Products are "healthy", based on the synonymous name of the Products "FIT" Snacks, when in fact the Products typically contain 6 grams of fat, depending on flavor and size of the Products. The United States Food, Drug and Cosmetic Act, along with parallel state statutes, have found healthy claims to be misleading in high fat content products just like Defendant's.

3.      As a purveyor in the highly lucrative protein bar market, Defendant knows that when it comes to labeling and marketing, words matter. This is why Defendant chose to name the Products "FIT" Snacks, and to emblazon the word "FIT" on the front and center of each Product label, in a bold all-capitalized font, where consumers cannot miss it.

4.      Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is well aware that all consumers who purchased the Products were exposed to, and would be impacted by, the "FIT" representation and would reasonably believe from this representation that the Products are healthy.  However, the Products are not "healthy" as they contain high levels of fat in violation of the United States Food, Drug and Cosmetic Act ("FDCA") and parallel state laws.

5.      The FDCA was enacted, in part, to ensure companies accurately label and identify their products so consumers can choose more healthful diets.  As part

of this strategic plan, the FDCA, along with parallel state statutes, have found healthy claims to be misleading in high fat content products such as Defendant's Products at issue in this litigation. Defendant's labeling of the Products as "FIT", and in the manner described above, is in violation of the FDCA and parallel state laws and is deceptive and unlawful.

## PARTIES

6.      Plaintiff Andres Vitiosus is a resident and citizen of Escondido, California in San Diego County.

7.      Plaintiff Debra Foley is a resident and citizen of Palmdale, California in Los Angeles County.

8.      Plaintiff Rachel Lumbra is a resident of Schenectady, New York in Schenectady County.

9.      Defendant Alani Nutrition, LLC is a Kentucky Limited Liability Corporation with its principal place of business at 7201 intermodal Drive, Louisville, Kentucky, 40258.

10.      Defendant designed, manufactured, warranted, advertised, and sold the Products throughout the United States, including the State of California, and continues to do so.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Classes are citizens of states other the state in which Defendant is incorporated and has its principal place of business.

12.     This Court has personal jurisdiction over Defendant because the acts and omissions giving rise to this action occurred in the state of California. This Court also has personal jurisdiction over Defendant because Defendant placed the Products in the stream of commerce directed at the State of California, Plaintiffs purchased the Products within California, and Defendant's fraud and misrepresentations occurred in California.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to at least one of Plaintiffs' claims occurred in this District. Specifically, Plaintiff Vitiosus purchased the Products within this District.

14.     Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## **FACTUAL ALLEGATIONS**

15.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner. Defendant sells the Products in all 50 states on its website and through various distributors and retailers across the United States.

### *FIT SNACKS*

16.     Defendant states on its website about the FIT SNACKS: "We crafted our line of supplements for people who take their health and wellness seriously. From appropriate portions to balanced ingredients, Alani Nu supplements are designed to help you find your strength inside. Fill the gaps in your nutrition, find extra motivation, or even balance your hormones with supplements to assist in fitness and wellness goals."[1]

---

[1] https://www.alaninu.com/pages/benefits (last visited 10/14/2021).

17.     Defendant states on every box of the Products "SNACKS YOU WON'T FEEL GUILTY ABOUT, FLAVORS YOU'LL LOVE."[2]

18.     Defendant has a marketing campaign that promotes the Products as "Balanced nutrition & superior taste", "You've found a protein bar that fits all your needs", and "Care-free snacking just got better".[3]

19.     Defendant bases its marketing campaign on the claim that snacking on the Products is "without guilt". It says on its website when purchasing the Products "indulge your cravings without the guilt. Smart snacking should be care-free and delicious which is why we've come up with a pretty awesome protein bar to fit all your needs. With our traditional flavors like Confetti Cake and Fruity Cereal, and new flavors like Blueberry Muffin & Chocolate Cake. Trust us, you're going to want one of each."[4]

20.     As discussed in more detail below, however, Defendant intentionally misleads consumers into believing the Products are a healthy choice by naming and marketing the Product as "FIT" in order to increase its sale and maximize its profits.

21.     Thus, Defendant's consumers pay more for the FIT SNACKS, which contains significantly higher amounts of fat than consumers reasonably expect.

22.     Plaintiffs would not have purchased or would have paid less for the Products had they known that the Products were deceptively labeled in violation of the FDCA and parallel state laws.

## *Labeling Requirements and Regulations*

23.     The Products' names "FIT SNACKS" and "FITBAR," also referred to in the United States Food and Drug Administration ("FDA") regulations as the

---

[2] https://www.amazon.com/Alani-Nu-Gluten-Free-Low-Sugar-Blueberry/dp/B087QX8CXV?th=1 (last visited 10/14/2021).

[3] *Id.*

[4] https://www.alaninu.com/products/protein-bar-12pk (last visited 10/14/2021).

"statement of identity," are prominently stated on the "principal display panel," or the front label, of the Products.

24.     Under the applicable FDA regulation, the Product label's statement of identity must be an appropriate descriptive name that is not misleading. 21 C.F.R. § 101.3(b)(3).

25.     Pursuant to 21 U.S.C. § 321(ff), Defendant's Products are "foods" regulated by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., ("FDCA") and FDCA regulations.

26.     Under section 403(r)(1)(A) of the FDCA (21 U.S.C. 343(r)(1)(A)), a food is mislabeled if it bears claims, either express or implied, that characterizes the level of a nutrient which is of a type required to be declared in nutrition labeling unless the claim is made in accordance with a regulatory definition established by FDA.

27.     21 CFR 101.65(d)(2) of the FDA provides:

You may use the term "healthy" or related terms (e.g., "health," "healthful," "healthfully," "healthfulness," "healthier," "healthiest," "healthily," and "healthiness") as an implied nutrient content claim on the label or in labeling of a food that is useful in creating a diet that is consistent with dietary recommendations if:

    (i)     The food meets the following conditions for fat, saturated fat, cholesterol, and other nutrients:

| If the food is... | The fat level must be... | The saturated fat level must be... | The cholesterol level must be... | The food must contain... |
|---|---|---|---|---|
| (A) A raw fruit or vegetable | Low fat as defined in § 101.62(b)(2) | Low saturated fat as defined in § 101.62(c)(2) | The disclosure level for cholesterol specified in § 101.13(h) or less | N/A |
| (B) A single-ingredient or a mixture of frozen or canned fruits and vegetables [1] | Low fat as defined in § 101.62(b)(2) | Low saturated fat as defined in § 101.62(c)(2) | The disclosure level for cholesterol specified in § 101.13(h) or less | N/A |
| (C) An enriched cereal-grain product that conforms to a standard of identity in part 136, 137 or 139 of this chapter | Low fat as defined in § 101.62(b)(2) | Low saturated fat as defined in § 101.62(c)(2) | The disclosure level for cholesterol specified in § 101.13(h) or less | N/A |
| (D) A raw, single-ingredient seafood or game meat | Less than 5 grams (g) total fat per RA [2] and per 100 g | Less than 2 g saturated fat per RA and per 100 g | Less than 95 mg cholesterol per RA and per 100 g | At least 10 percent of the RDI [3] or the DRV [4] per RA of one or more of vitamin A, vitamin C, calcium, iron, protein, or fiber |
| (E) A meal product as defined in § 101.13(l) or a main dish product as defined in § 101.13(m) | Low fat as defined in § 101.62(b)(3) | Low saturated fat as defined in § 101.62(c)(3) | 90 mg or less cholesterol per LS [5] | At least 10 percent of the RDI or DRV per LS of two nutrients (for a main dish product) or of three nutrients (for a meal product) of: vitamin A, vitamin C, calcium, iron, protein, or fiber |
| (F) A food not specifically listed in this table | Low fat as defined in § 101.62(b)(2) | Low saturated fat as defined in § 101.62(c)(2) | The disclosure level for cholesterol specified in § 101.13(h) or less | At least 10 percent of the RDI or the DRV per RA of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber |

28.    Section 101.62(b)(2) defines low fat as: "contains 3 g or less of fat per reference amount customarily consumed[.]"

CLASS ACTION COMPLAINT

7

29.     While the term "FIT" is not listed as an implied nutrient claim, the term "fit" is synonymous with the term "healthy." Merriam-Webster defines "fit" as "sound physically and mentally : HEALTHY."[5]

30.     Further, the Federal Trade Commission has stated that synonyms of the statutorily defined terms for Nutrient Content Claims will also face enforcement action for being misleading.[6]

31.     Specifically, in its latest statement, it specifically stated it was going to enforce misleading synonyms like the claims made by Defendant for FIT SNACKS:

> The Commission will examine advertising to ensure that claims that characterize the level of a nutrient, including those using **synonyms that are not provided for in FDA's regulations, are consistent with FDA definitions**. Commission precedent establishes that **an advertisement that can reasonably be interpreted in a misleading way is deceptive, even though other, nonmisleading interpretations may be equally possible**. **Thus,  when express or implied claims suggest that a food product meets the standard for use of an FDA-defined term, advertisers should ensure that the food actually meets the relevant FDA standard**. For example, depending on the context of an ad, use of the phrases "packed with" or "lots of" to describe the level of fiber in a food could convey to some reasonable consumers that the food is "high" in fiber. Because FDA's regulations define the terms "good source" and "high" with respect to fiber, consumers are likely to be misled if a "high fiber" claim is implied by an ad for a food that is only a "good source" of fiber.[7]

32.     Both the FDA and FTC believe these types of claims, including their synonyms, to be misleading to consumers.

---

[5] *See* https://www.merriam-webster.com/dictionary/fit (Last visited Sept. 3, 2021).

[6] *See* https://www.ftc.gov/public-statements/1994/05/enforcement-policy-statement-food-advertising#44 (last visited November 19, 2021).

[7] *Id.* (emphasis supplied).

33.     Defendant intentionally named and marketed the Products with the term "Fit" to make the Products stand out to consumers. In doing so, consumers were misled into believing that the Products are healthy.

34.     However, pursuant to the FDCA and parallel state statutes, the Products are not healthy. Therefore, Defendant's Products are misleading under the FDCA, and parallel state statutes, because the Products contain well over 3 grams of fat.

35.     Further, the FDA states in their Guidance for the Industry regarding "healthy" claims, that they intend to exercise enforcement discretion where the products: 1) are not low in fat, but have a fat profile makeup of predominately mono and polyunsaturated fats; or 2) contain at least ten percent of the Daily Value (DV) per reference amount customarily consumed (RACC) of potassium or Vitamin D".[8]

36.     The FIT SNACKS Munchies contains 4 grams of Saturated Fat and 6 grams of Total Fat. The mono and polyunsaturated fats are not listed on the label, but at a maximum they are 2g of fat. Therefore, the mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Munchies. Further, the Munchies contains 0% of the DV of Vitamin D and 2% of the DV of potassium. Therefore, the Munchies also have far below 10% the DV of potassium and Vitamin D required to be "healthy".

---

[8] *See* https://www.fda.gov/media/100520/download (Last visited Sept. 4, 2021).

1

2

3

4

5

6

7

8



9

10

11

12

13

14



15

16

17

18

19

20

37.     The FIT SNACKS Peanut Butter Crisp contains 6 grams of Saturated Fat and 7 grams of Total Fat. The mono and polyunsaturated fats are not listed on the label, but at a maximum they are 1g of fat. Therefore, the mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Peanut Butter Crisp. Further, the Peanut Butter Crisp contains 0% of the DV of Vitamin D and 2% of the DV of potassium. Therefore, the Peanut Butter Crisp also has far below 10% the DV of potassium and Vitamin D required to be "healthy".

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



38.     The FIT SNACKS Blueberry Muffin contains 4 grams of Saturated Fat and 6 grams of Total Fat. The mono and polyunsaturated fats are not listed on the label, but at a maximum they are 2g of fat. Therefore, the mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Blueberry Muffin. the Blueberry Muffin contains 0% of the DV of Vitamin D and 2% of the DV of potassium. Therefore, the Blueberry Muffin also has far below 10% the DV of potassium and Vitamin D required to be "healthy".

21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17
18



19

20    39.    The FIT SNACKS Chocolate Cake contains 4 grams of Saturated Fat

21 and 6 grams of Total Fat. The mono and polyunsaturated fats are not listed on the

22 label, but at a maximum they are 2g of fat. Therefore, the mono and polyunsaturated

23 fats are clearly and factually not the "majority" of the fat content contained within

24 the Chocolate Cake. Further, the Chocolate Cake contains 0% of the DV of Vitamin

25 D and 2% of the DV of potassium. Therefore, the Chocolate Cake also has far below

26 10% the DV of potassium and Vitamin D required to be "healthy".

27
28





40.     The FIT SNACKS Confetti Cake contains 4 grams of Saturated Fat and 6 grams of Total Fat. The mono and polyunsaturated fats are not listed on the label, but at a maximum they are 2g of fat. Therefore, the mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Confetti Cake. Further, the Confetti Cake contains 0% of the DV of Vitamin D and 2% of the DV of potassium. Therefore, the Confetti Cake also has far below 10% the DV of potassium and Vitamin D required to be "healthy".



41.     The FIT SNACKS Fruity Cereal contains 4 grams of Saturated Fat and 6 grams of Total Fat. The mono and polyunsaturated fats are not listed on the label, but at a maximum they are 2g of fat. Therefore, the mono and polyunsaturated fats are clearly and factually not the "majority" of the fat content contained within the Fruity Cereal. Further, the Fruity Cereal contains 0% of the DV of Vitamin D and 2% of the DV of potassium. Therefore, the Fruity Cereal also has far below 10% the DV of potassium and Vitamin D required to be "healthy".

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19   42.   Defendant's false, deceptive and misleading label statements violate 21

20   U.S.C. § 343(a)(1) and statutes adopted by many states deeming food misbranded

21   when "its labeling is false or misleading in any particular."

22   43.   Defendant's false, deceptive and misleading label statements are

23   unlawful under State Unfair and Deceptive Acts and Practices Statutes and/or

24   Consumer Protection Acts, which prohibit unfair, deceptive or unconscionable acts

25   in the conduct of trade or commerce.

26   44.   Further, as explained above, Defendant's claims are misleading to

27   consumers in violation of 21 U.S.C. § 343, which states, "A food shall be deemed to

28

be misbranded—False or misleading label [i]f its labeling is false or misleading in any particular."

45.     The California Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA," as the food labeling regulations of California Cal. Health & Saf. Code, § 110100, subd. (a). Thus, a violation of federal food labeling laws is an independent violation of California law and actionable as such.

46.     The New York Food, Drug and Cosmetic Act, New York has expressly adopted the federal food labeling requirements and has stated "[a] food shall be deemed misbranded in accordance with the Federal Food, Drug and Cosmetic Act (21 U.S.C. §343)[.]" Public Health Law §71.05(d). Thus, a violation of federal food labeling laws is an independent violation of New York law and actionable as such.

47.     Plaintiffs and Class members would not have purchased the Products or would have not paid as much for the products, had they known the truth about the mislabeled and falsely advertised products.

### Plaintiffs' Purchases of The Products

**Andres Vitiosus**

48.     Plaintiff Andres Vitiosus purchased the FIT SNACKS in 2018, 2019, 2020 from a local Walmart and GNC.

49.     After observing the word "FIT" on the label, Plaintiff Vitiosus purchased the Products believing it to be a healthy option and for the protein benefits.

50.     Plaintiff Vitiosus paid approximately $30 for the box of Products at each time of purchase.

51.     If Plaintiff Vitiosus had been aware that the Products were not "healthy" or "fit" as defined by federal and state law they would not have purchased or paid significantly less for the Products.

52.    As a result of Defendant's actions, Plaintiff Vitiosus has incurred damages, including economic damages.

**Debra Foley**

53.    Plaintiff Nancy Foley purchased FIT SNACKS Protein Bar on or around July 29, 2021.

54.    After observing the word "FIT" on the label, Plaintiff purchased the Product believing it to be a healthy option that would help her lose weight.

55.    Plaintiff paid $6.98 for the Product.

56.    If Plaintiff had been aware that the Products were not "healthy" or "fit" as defined by federal and state law they would not have purchased or paid significantly less for the Products.

57.    As a result of Defendant's actions, Plaintiff has incurred damages, including economic damages.

**Rachel Lumbra**

58.    Plaintiff Rachel Lumbra purchased FIT SNACKS Fit Snacks in January, February, and May of 2021.

59.    After observing the word "FIT" on the label, Plaintiff purchased the Product believing it to be a healthy option that would help her lose weight.

60.    Plaintiff paid $3.99 for the Product at each time of purchase.

61.    If Plaintiff had been aware that the Products were not "healthy" or "fit" as defined by federal and state law they would not have purchased or paid significantly less for the Products.

62.    As a result of Defendant's actions, Plaintiff has incurred damages, including economic damages.

## **CLASS ACTION ALLEGATIONS**

63.    Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined Classes:

> **National Class:** During the fullest period allowed by law, all persons in the United States who purchased any of the Products for their personal use and not for resale within the United States.

> **California Subclass:** During the fullest period allowed by law, all persons in the State of California who purchased any of the Products for personal use and not for resale in the State of California.

> **New York Subclass:** During the fullest period allowed by law, all persons in the State of New York who purchased any of the Products for personal use and not for resale in the State of New York.

64.    Members of the classes described are referred to as "Class Members" or members of the "Classes."

65.    The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

66.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

67.     Plaintiffs reserve the right to amend the definitions of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

68.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiffs but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

69.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

a) Whether Defendant made false and/or misleading statements to the consuming public concerning the use of the word "FIT" to market, advertise, package, label, promote and sell the Products;

b) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and conform with the requirements of the FDCA;

c) Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

d) Whether Defendant's representations caused injury to Plaintiffs and Class and Subclass Members; and

e) Whether Plaintiffs and Class and Subclass Members are entitled to damages.

70.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

71.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class Members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Plaintiffs share the aforementioned facts and legal claims or questions with Class Members, and Plaintiffs and all Class Members have been similarly affected by Defendant's common course of conduct as alleged herein.  Plaintiffs and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct.

72.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Classes because they are members of the Classes and her interests do not conflict with the interests of the Class Members she seeks to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

73.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).**  Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well

as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

74. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

75. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

- The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

- Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

- The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

- Individual joinder of all putative Class Members is impracticable;

- Absent a class action, Plaintiffs and putative Class Members will continue to suffer harm as a result of Defendant's unlawful conduct; and

- This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and putative Class Members can seek redress for the harm caused by Defendant.

76.    In the alternative, the Classes may be certified for the following reasons:

- The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

- Adjudications of individual Class and Members' claims against Defendant would, as a practical matter, be dispositive of the interests of other putative Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

- Defendant has acted or refused to act on grounds generally applicable to the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

## **CLAIMS ALLEGED**

### **COUNT I**

**Violation of California's Unfair Competition Law ("UCL")**

**California Business and Professions Code §17200, *et seq*.**

**(On Behalf of Plaintiffs Vitiosus and Foley**

**and the California Subclass)**

77.     Plaintiffs Andres Vitiosus and Debra Foley repeat and re-allege the allegations above as if set forth herein.

78.     The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

79.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

80.     Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in misleading and deceptive advertising and labeling that represented that the Products were "fit," or in other words, "healthy." This use of the word "fit" misleads consumers into believing the Products are "healthy" or "fit" as defined by federal and state law. Defendant's acts and practices offend an established public policy of accurate labeling, and is immoral, unethical, oppressive, and substantially injurious to consumers.

81.     The harm to Plaintiffs and the California Subclass outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests other than the misleading and deceptive conduct described herein.

82.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

83.     Defendant's acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiffs is highly likely to deceive members of the consuming public. Defendant intended that Plaintiffs and each of the other members of the California Subclass would rely upon their deceptive

conduct and false advertising, and a reasonable person would in fact be misled by this deceptive conduct.

84.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

85.     Defendant's acts and practices alleged above constitute unlawful business acts or practices as they have violated state and federal law. Defendant's false, deceptive, and misleading label statements violate 21 U.S.C. § 343(a)(1), which states, "[a] food shall be deemed to be misbranded—If (1) its labeling is false or misleading in any particular[.]"

86.     In addition, California law expressly prohibits false advertising. See Cal. Bus. & Prof. Code 17500. Moreover, the Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), ("CLRA") also prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised[.]"

87.     The violation of any law constitutes an "unlawful" business practice under the UCL.

88.     As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

89.     Defendant's practices, as set forth above, have misled Plaintiffs, the California Subclass, and the public in the past and will continue to mislead in the future. Consequently, Defendant's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

90.     Defendant's violation of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Plaintiffs and the members of the California Subclass and the public will be deceived into purchasing products based on misrepresentations and suffer economic damages to be proven at trial.

91.     Pursuant to the UCL, Plaintiffs and the California Subclass are entitled to preliminary and permanent injunctive relief and order Defendant to cease this

unfair competition, as well as disgorgement and restitution to Plaintiffs and the California Subclass of all Defendant's revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

## COUNT II
### Violation of California's Consumer Legal Remedies Act ("CLRA")
### California Civil Code §1750, *et seq.*
### (On Behalf of Plaintiffs Vitiosus and Foley
### and the California Subclass)

92. Plaintiffs Andres Vitiosus and Debra Foley repeat and re-allege the allegations above as if set forth herein.

93. This cause of action is brought pursuant to the CLRA, Cal. Civ. Code § 1750, et seq. Plaintiffs and the California Subclass are "consumers" as defined by Cal. Civ. Code § 1761(d). Defendant's sale of the Products in retail stores and online to Plaintiffs and the California Subclass were "transactions" within the meaning of Cal. Civ. Code §1761(e). The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

94. Defendant violated and continues to violate the CLRA by engaging in at least the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiffs and the California Subclass that were intended to result in, and did result in, the sale of the Products:

95. "Advertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code § 1770(a)(9));

96. Representing that the Products "have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code § 1770(a)(5));

97. Representing that the Products "are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code § 1770(a)(7)).

98.   Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised the Products to unwary consumers.

99.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

100.   Defendant's wrongful business practices were a direct and proximate cause of actual harm to Plaintiffs and California Subclass Members.

101.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), on October 8, 2021, Plaintiff Foley and California Subclass Members sent the required notice to Defendant regarding its unlawful conduct and violation of the CLRA.

102.   After receiving notice regarding its unlawful conduct and violation of the CLRA, Defendant did not meet the demands enumerated in Plaintiff Foley's notice letter within 30 days. Hence, Plaintiff Foley now seeks to recover actual damages from Defendant pursuant to the CLRA.

103.   Pursuant to California Civil Code § 1780, Plaintiffs seek injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems proper on behalf of the California Subclass.

**COUNT III**
**Violation of California's False Advertising Law ("FAL")**
**California Business & Professions Code §17500,** *et seq.*
**(On behalf of Plaintiffs Vitiosus and Foley**
**and the California Subclass)**

104.   Plaintiffs Andres Vitiosus and Debra Foley repeat and re-allege the allegations above as if set forth herein.

105.   Cal. Bus. & Prof. Code § 17500 provides:

> It is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising

device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…

106.   The "intent" required by Section17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

107.   Defendant's advertising and labeling that represented misrepresented the amount of protein in the Products was an unfair, untrue, and misleading practice. This deceptive marketing practice gave consumers the false impression of the amount of protein in the Products.

108.   As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiffs and the California Subclass have suffered injury in fact and have lost money. As such, Plaintiffs request that this Court order Defendant to restore this money to Plaintiffs and all members of the California Subclass, and to enjoin Defendant from continuing these unfair practices in violation of the FAL in the future. Otherwise, Plaintiffs, the California Subclass, and the broader public will be irreparably harmed and/or denied an effective and complete remedy.

### COUNT IV
### Violation of New York General Business Law § 349
### (On Behalf of Plaintiff Lumbra and the New York Subclass)

109.   Plaintiff Rachel Lumbra repeats and re-alleges the allegations above as if set forth herein.

110.   New York Business Law §349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]" N.Y. GEN. BUS. LAW § 349.

111.   Defendant's actions occurred in the conduct of business, trade or commerce.

112.   Defendant's foregoing acts and practices, including its omissions, were directed at consumers.

113.   Defendant's foregoing deceptive acts and practices, including its omissions, were material, in part, because they concerned an essential part of the Products ingredients and functionality.

114.   Defendant's conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of the New York GBL. All of Defendant's deceptive acts and practices, which were intended to mislead consumers in a material way in the process of purchasing Defendant's Products, constitute conduct directed at consumers.

115.   As purveyors in the highly lucrative protein bar market, Defendant knows that when it comes to labeling and marketing, words matter. This is why Defendant chose to name the Products "FIT" Snacks, and to emblazon the word "FIT" on the front and center of each Product label, in a bold all-capitalized font, where it cannot be missed by consumers.

116.   Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is well aware that all consumers who purchased the Products were exposed to, and would be impacted by, the "FIT" representation and would reasonably believe from this representation that the Products are healthy.  However, the Products are not "healthy",  in violation of the United States Food, Drug and Cosmetic Act ("FDCA") and parallel state laws.

117.   Defendant's deceptive marketing has been successful. Customer reviews indicate that they buy the FITSNACKS because they supposedly support a healthy lifestyle.

118.   As described herein, Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the statutes adopted by many states, which deem food misbranded when "its labeling is false or misleading in any particular."

119.   Defendant's foregoing deceptive and unfair acts and practices, including its omissions, were and are deceptive acts or practices in violation of the New York's General Business Law § 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, et seq., in that:

Defendant manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Products with the word "FIT" on the front and center of each Product label, in a bold all-capitalized font, where it cannot be missed by consumers, in order to convince consumers that the products are healthy when they knew, or should have known that the products are not "healthy" in violation of the FDCA and parallel state laws.

120.   Defendant further deceived reasonable consumers into believing that the Products were fit for their intended purpose of a healthy lifestyle, and omitted and failed to disclose that the Products are not healthy as defined by the FDCA and parallel state laws.

121.   Plaintiff and the New York Subclass Members suffered damages when they purchased the Products. Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff and the New York Subclass Members who were unaware that the Products are not "healthy" in violation of the FDCA and parallel state laws.

122.   Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff and putative New York Subclass Members, would not have purchased their Products had they known that the Products are not "healthy" as defined by the FDCA and parallel state laws.

123.   As a direct and proximate result of Defendant's deceptive acts and practices, including its omissions, Plaintiff and New York Subclass Members have been damaged as alleged herein, and are entitled to recover actual damages to the

extent permitted by law, including class action rules, in an amount to be proven at trial.

124.   In addition, Plaintiff and New York Subclass Members seek equitable and injunctive relief against Defendant's on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

125.   On October 6, 2021, Plaintiff gave notice to Defendant of its violations of the New York General Business Law § 349 On October 21, 2021, Defendant responded to Plaintiff by letter, but did not remedy its breaches of New York General Business Law § 349.

126.   Therefore, within 30 days of receiving notice, Defendant did not take the necessary steps outlined in Plaintiff's notice letter to remedy their breach of New York General Business Law § 349 for the Products.

127.   In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT V
### Violation of New York General Business Laws § 350
### (On Behalf of Plaintiff Lumbra and the New York Subclass)

128.   Plaintiff Rachel Lumbra repeats and re-alleges the allegations above as if set forth herein.

129.   New York Business Law §350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[.]" N.Y. GEN. BUS. LAW § 350.

130.   Defendant's actions occurred in the conduct of business, trade or commerce.

131.   Defendant's foregoing acts and practices, including its advertising, were directed at consumers.

132.   Defendant's conduct, as described in this Complaint, constitutes "false advertising" within the meaning of the New York GBL, as Defendant publicly disseminated misleading and false advertisements through advertising and marketing statements, suggesting that their Products were healthy.

133.   Defendant's foregoing, consumer-oriented, unfair or deceptive acts and practices, including its advertising, representations, and omissions, constitutes false and misleading advertising in a material way in violation of the New York's General Business Law § 350.

134.   Defendant's false, misleading and deceptive advertising and representations include misrepresenting and misleadingly marketing and labeling the products were fit for their intended purpose of a healthy lifestyle and omitting and failing to disclose that the Products are not healthy as defined by the FDCA and parallel state laws.

135.   Defendant's false, misleading, and deceptive advertising and representations of fact were and are directed at consumers.

136.   Defendant's false, misleading, and deceptive advertising and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

137.   Defendant's false, misleading, and deceptive advertising and representations of fact have resulted in consumer injury or harm to the public interest

138.   Defendant intended that Plaintiff and each of the other members of the New York Subclass would rely upon their deceptive conduct and false advertising, and a reasonable person would in fact be misled by this deceptive conduct. Defendant engaged in misleading and deceptive advertising that represented that the Products were "fit," or in other words, "healthy." Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Products were exposed to, and would be impacted by, the "fit" representation and would reasonably believe from this

representation that the Products are healthy. This use of the word "fit" misleads consumers into believing the Products were healthy. However, the Products are not "healthy" as they are not healthy as defined by the FDCA and parallel state laws. Thus, Defendant's advertising and labeling that the Products were fit and healthy was an unfair, untrue, and misleading practice.

139.   Consumers, including Plaintiff and New York subclass members either would not have purchased the Products or would have paid less for them had the known that the Products are not "healthy" in violation of the FDCA and parallel state laws.

140.   As a direct and proximate result of Defendant's deceptive acts and practices, including it's use or employment of false advertising, Plaintiff and each of the other members of the New York Subclass have sustained actual damages in an amount to be proven at trial.

141.   In addition, Plaintiff and New York Subclass Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

142.   On November 17, 2021, Plaintiff gave notice to Defendant of its violations of the New York General Business Law § 350. Defendant never responded to Plaintiff's letter.

143.   Therefore, within 30 days of receiving notice, Defendant did not take the necessary steps outlined in Plaintiff's notice letter to remedy their breach of New York General Business Law § 350 for the Products.

144.   In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

# COUNT VI
## Breach of Express Warranty
### (On Behalf of the National Class and, alternatively, the California and New York Subclasses)

145.   Plaintiffs repeat and re-allege the allegations above as if set forth herein.

146.   Plaintiffs, and each member of the National Class, formed a contract with Defendant at the time Plaintiffs and each member of the National Class purchased the Products.

147.   The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.

148.   This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the National Class and Defendant.

149.   As set forth above, Defendant purports, through its "fit" claims made in connection with its advertising, labeling, marketing, and packaging, to create an express warranty that the Products contain a certain amount Total Fat and that a majority of that fat is the healthier mono and polyunsaturated fat.

150.   Plaintiffs and the members of the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

151.   Defendant breached express warranties about the Products and their qualities because Defendant's Products' name, "FIT SNACKS" were misleading, as set forth above, and the Products do not conform to Defendant's affirmations and promises described above.

152.   Plaintiffs and each of the members of the National Class would not have purchased the Products had they known the true nature of the Products' nutritional value.

153.   As a result of Defendant's breach of warranty, Plaintiffs and each of the members of the National Class have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

154.   Plaintiff Foley and California Subclass Members sent notice to Defendant regarding its unlawful conduct and breach of express warranties.

155.   After receiving notice regarding its unlawful conduct and breach of express warranties, Defendant did not meet the demands enumerated in their notice letter within 30 days.

## COUNT VII
## Unjust Enrichment
### (In the Alternative to Count I and on Behalf of the National Class and, alternatively, the California and New York Subclasses)

156.   Plaintiffs repeat and re-allege the allegations above as if set forth herein.

157.   Plaintiffs and the other members of the National Class conferred benefits on Defendant by purchasing the Products.

158.   Defendant has been unjustly enriched in retaining the revenues derived from the purchase of the Products by Plaintiffs and the other members of the National Class.

159.   Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs and the other members of the National Class because they would have not purchased the Products if Defendant's had not mislead them into believing the Products were "fit," or healthy.

160.   Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the National Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the other members of the National Class for their unjust enrichment, as ordered by the Court.

## JURY DEMAND

161.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, pray for judgment and relief against Defendant as follows:

a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiff to serve as representatives for the Classes and Plaintiffs' counsel to serve as Class Counsel;

b) For an order enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

c) For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d) For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

For such other and further relief as the Court deems just and proper

DATED:  December 8, 2021.          Respectfully submitted,

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**

*/s/ Alex R. Straus*
Alex R. Straus, Esq. (SBN 321366)
280 South Beverly Place
Beverly Hills, CA 90212
Tel.:   (917) 471-1894
Fax:   (310) 496-3176
Email:       astraus@milberg.com

***Attorneys for Plaintiff***