1
2
3
4
5
6
7         **UNITED STATES DISTRICT COURT**
8         **SOUTHERN DISTRICT OF CALIFORNIA**
9
10
11   ANDRES VITIOSUS, et al., *individually*
     *and on behalf of all others similarly*          Case No. 21-cv-2048-MMA (MDD)
12   *situated*,
                                                       **ORDER GRANTING IN PART**
13                                   Plaintiffs,        **DEFENDANT'S MOTION TO**
                                                       **DISMISS AND STRIKE CLASS**
14   v.                                                **ALLEGATIONS**
15   ALANI NUTRITION, LLC,
                                                       [Doc. No. 9]
16                                   Defendant.
17
18          On December 8, 2021, Andres Vitiosus, Debra Foley, and Rachel Lumbra
19   (collectively, "Plaintiffs") filed a putative class action complaint against Defendant Alani
20   Nutrition, LLC, alleging violations of California and New York consumer protection
21   laws as well as claims for breach of express warranty and unjust enrichment.  Doc. No. 1
22   ("Compl.").  Defendant now moves to dismiss the Complaint and strike the nationwide
23   class allegations.  Doc. No. 9.  Plaintiffs filed an opposition, to which Defendant replied.
24   Doc. Nos. 10, 11.  For the reasons set forth below, the Court **GRANTS** Defendant's
25   motion **IN PART**.[1]
26
27   _____
28   [1] Both parties are reminded that briefs in support of and in opposition to motions are not to exceed
     twenty-five (25) pages total without leave of the Court.  *See* CivLR 7.1.h.

# I. BACKGROUND

Defendant is the manufacturer of FIT SNACKS Protein Bars ("FIT Bars" or the "Bars"). Compl. ¶ 1. Generally speaking, Plaintiffs allege that Defendant misleads consumers by representing that FIT Bars are healthy through its labeling, packaging, and advertising. *Id.* ¶¶ 2, 16–19. Specifically, Plaintiffs maintain they were misled when they observed the term "FIT" on the wrapper, *see* Compl. ¶¶ 49, 54, 59, of six FIT Bars flavors: (1) Munchies; (2) Peanut Butter Crisp; (3) Blueberry Muffin; (4) Chocolate Cake; (5) Confetti Cake; and (6) Fruity Cereal. For example,



Compl. at 10.

According to Plaintiffs, FIT Bars are not healthy but instead are high in fat and contain less than the daily value ("DV") of Vitamin D and potassium. *Id.* ¶ 36. Plaintiffs also assert that the labeling "FIT" violates the Food and Drug Administration's regulation and therefore is misleading. *Id.* ¶ 44. As such, Plaintiffs bring seven claims against Defendant: (1) violation of California's Unfair Competition Law, Cal. Bus. Prof. Code § 17200 *et seq.* ("UCL"); (2) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"); (3) violation of California's False Advertising Law, Cal. Bus. Prof. Code § 17500 *et seq.* ("FAL"); (4) Violation of New York's General Business Law ("GBL") § 349; (5) violation of New York's GBL § 350; (6) breach of express warranty; and (7) unjust enrichment.

## II. Legal Standard

A Rule 12(b)(6)[2] motion tests the legal sufficiency of the claims made in the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570. The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). A court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Additionally, allegations of fraud or mistake require the pleading party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The context surrounding the fraud must "be 'specific enough to give defendants notice of

---

[2] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "'"Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.'  A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'" *Kearns*, 567 F.3d at 1124 (citation omitted) (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*).

Further, pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Sierra v. Dep't of Family & Children Servs.*, No. CV 15-03691-DMG (KES), 2016 U.S. Dist. LEXIS 91068, at *8 (C.D. Cal. Feb. 26, 2016) (quoting *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)).  Thus, a jurisdictional challenge can be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. *Comm. for Immigrant Rights v. County of Sonoma*, 644 F. Supp. 2d 1177, 1189 (N.D. Cal. 2009).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading.  *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. DISCUSSION

Plaintiffs bring seven causes of action against Defendant under both California and New York consumer protection laws, as well as claims for breach of express warranty

and unjust enrichment.  *See* Compl.  Defendant seeks to dismiss all claims as well as strike the nationwide class allegations.  *See* Doc. No. 9.

Plaintiffs put forth two theories supporting their claims, all seven of which sound in fraud.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (explaining that where a plaintiff alleges "a unified course of fraudulent conduct" and relies on the conduct, the claim sounds or is grounded in fraud, and "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)").  First, Plaintiffs contend that the term "FIT" on the Bars' label is an implied nutrient content claim, suggesting that the product "may be useful in maintaining healthy dietary practices," 21 CFR § 101.13(b)(2)(ii), but that FIT Bars do not meet the FDA's definition of "healthy."  Second, Plaintiffs assert that "FIT" is misleading as it is not an "appropriately descriptive term," 21 CFR § 101.3(b)(3).

## A.    Preemption

Defendant argues that Plaintiffs' state law claims are preempted by federal law. *See* Doc. No. 9-1 at 8.  Plaintiffs contend that their state law claims are not preempted because use of the term "FIT" violates federal regulation.  *See* Doc. No. 10 at 11.

"Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field."  *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotations omitted).  "Express preemption exists when a statute explicitly addresses preemption."  *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015).

Relevant to this case is the regulatory scheme relating to food branding and labeling.  The Federal Food, Drug, and Cosmetic Act of 1938 ("FDCA") established the Food and Drug Administration ("FDA") within the Department of Health and Human Services.  *See* 21 U.S.C. § 393.  "The FDCA grants the FDA authority to regulate the field of food safety."  *In re Kind LLC "Healthy & All Nat." Litig.*, 209 F. Supp. 3d 689,

692 (S.D.N.Y. 2016) (quoting *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 251 (3d Cir. 2008) (citing 21 U.S.C. § 371)).  The Nutrition Labeling and Education Act ("NLEA") amended the FDCA in 1990 to standardize the requirements for nutrition labeling and health claims on most, if not all, food packaging.  *See Reid*, 780 F.3d at 959 (quoting *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014)).

California and New York broadly prohibit the misbranding of food in language largely identical to that found in the FDCA.  California's Sherman Law, Cal. Health & Saf. Code § 109875 *et seq.*, provides that food is misbranded "if its labeling is false or misleading in any particular."  *Id.* § 110660.  It also explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the [FDCA]," as California's food labeling regulations.  *See* Cal. Health & Saf. Code, § 110100(a).  New York's Agriculture and Marketing Law similarly provides in relevant part that food shall be deemed misbranded "[i]f its labeling is false or misleading in any particular," and also incorporates the FDCA's labeling provisions found in 21 C.F.R. § 101.  N.Y. Agric. & Mkts. Law § 201.

Thus, Plaintiffs' claims will "not fail on preemption grounds if the requirements they seek to impose are either identical to those imposed by the FDCA and the NLEA amendments or do not involve claims or labeling information of the sort described in sections 343(r) and 343(q)."  *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1119 (N.D. Cal. 2010).

### 1.   Implied Nutrient Content Claim

The NLEA includes an express preemption provision for certain claims appearing on food labels.  Section 343-1(a)(5), often referred to as section 403A, expressly "preempts state or local governments from imposing any requirement on nutrient content claims made by a food purveyor 'in the label or labeling of food that is not identical to the requirement of section 343(r).'"  *Id.* at 1118.  "Section 343(r)(1) of the NLEA describes claims in the labeling of food that expressly or by implication, characterize the level of any nutrient or characterize the relationship of any nutrient to a disease or health

1   related condition." *Id.* (quoting 21 U.S.C. § 343(r)(1)).  Accordingly, the NLEA's

2   express preemption provision includes the type of claims—which could also be described

3   as statements—in 21 U.S.C. § 343(r)(1).  Because section 403A(a)(5) preempts any state

4   requirement that is different than the FDCA's regulation in section 343(r)(1), there are

5   two ways plaintiffs may escape its preemptive force: (1) if the plaintiffs' claims seek to

6   impose requirements that are identical to those imposed by the NLEA; or (2) if the

7   requirements plaintiffs seek to impose are not with respect to claims of the sort described

8   in Section 343(r)(1).  *See Ackerman v. Coca-Cola Co.*, No. 09-0395, 2010 U.S. Dist.

9   LEXIS 73156, at *21 (E.D.N.Y. July 21, 2010).

10      Plaintiffs here have opted for the former.  Plaintiffs' first theory of liability rests

11   upon the allegation that Defendant's labeling includes a synonym of the word "healthy,"

12   which is impermissible under federal law because FIT Bars do not meet the mandatory

13   minimum and maximum conditions to make an implied nutrient content claim involving

14   the word "healthy."  *See* Compl. ¶¶26–27.  Thus, as pleaded, whether Defendant's

15   labeling violates state law turns on whether the word "FIT" falls within the second prong

16   of 21 CFR § 101.13(b)(2) and thus is an impermissible implied nutrient content claim.

17   Put another way, Plaintiffs' theory turns on whether the FDA regulates the word "FIT" as

18   a synonym of "healthy" under 21 CFR § 101.65(d)(2).  If the FDA regulation does not

19   encompass "FIT," then Plaintiffs' claims, based on this implied nutrient content claim

20   theory, are preempted.  *See* 21 U.S.C. § 343(r).

21      An implied nutrient content claim "[d]escribes the food or an ingredient therein in

22   a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high

23   in oat bran')."  21 C.F.R. § 101.13(b)(2)(i)–(ii); *see also Ackerman*, 2010 U.S. Dist.

24   LEXIS 73156, at *10 (providing the example "as much fiber as an apple").  An implied

25   nutrient content claim might also make "a "general nutritional claim,' (a subcategory of

26   an implied nutrient claim) consisting of an express or implied claim that the nutrient

27   content of a food may help consumers maintain healthy dietary practices." *Ackerman*,

28   2010 U.S. Dist. LEXIS 73156, at *10.

As noted above, all of Plaintiffs' claims are premised in part upon an alleged violation of 21 CFR § 101.65(d)(2), which regulates implied nutrient content claims (specifically, general nutritional claims) that "use the term 'healthy' or related terms." 21 CFR § 101.65(d)(2). However, Plaintiffs have not plausibly pleaded an implied nutrient content claim or general nutritional claim. To reiterate, a nutrient content claim is "[a] claim that expressly or implicitly *characterizes the level of a nutrient*." 21 CFR § 101.13(b) (emphasis added). Regardless of whether the regulation encompasses the word "FIT," Plaintiff must first plead that the word is subject to the regulation at all, that is, that the word, in connection with other words, characterizes or otherwise makes a claim about a particular nutrient. The relevant subsection states:

> (d) General nutritional claims. (1) This paragraph covers labeling claims that are implied nutrient content claims because they:
>
>> (i) Suggest that a food because of its nutrient content may help consumers maintain healthy dietary practices; and
>>
>> (ii) Are made in connection with an explicit or implicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams of fat").
>
> (2) You may use the term "healthy" or related terms (e.g., "health," "healthful," "healthfully," "healthfulness," "healthier," "healthiest," "healthily," and "healthiness") as an implied nutrient content claim on the label or in labeling of a food that is useful in creating a diet that is consistent with dietary recommendations if:
>
>> (i) The food meets the following conditions for fat, saturated fat, cholesterol, and other nutrients:

21 CFR § 101.65(d) (chart omitted).

Therefore, even assuming the word "FIT" suggests that the Bars may help consumers maintain healthy dietary practices, *see* 21 CFR § 101.65(d)(1)(i), and is a synonym of "healthy," *see* 21 CFR § 101.65(d)(2), Plaintiffs do not plead that the word *alone* makes any "explicit or implicit claim or statement about a nutrient," 21 CFR

§ 101.65(d)(1)(ii).

More importantly, however, Plaintiffs' state law causes of action—to the extent they are premised upon the allegation that Defendant's "FIT" labeling violates 21 CFR § 101.65—are preempted. While Plaintiffs plausibly plead that "FIT" is a synonym of "healthy," *see* Compl. ¶¶ 27, 29, they have not plausibly pleaded that section 101.65(d)'s definition of "healthy" extends to synonyms such as the word "FIT." Contrary to Plaintiffs' position, the FDA has *not* expanded the definition of "healthy" to synonyms. The FDA has stated the following, specifically in the context of 21 CFR § 101.65(d)(2):

*C. Terms Subject to Definition*

7. Several comments requested that FDA extend the definition of "healthy" to terms like "health," "healthful," and other derivatives of "healthy" to be consistent with the use of the term proposed by USDA. A few of these comments asserted that unless the definition of "healthy" applies to the derivatives of this term, consumers will be confused by the use of the derivatives on the labels of products that do not qualify for the "healthy" definition.

The agency finds merit in these comments and concludes that the definition of "healthy" should also apply to the use of any of its derivatives in a nutritional context. The agency believes that derivatives of "healthy" have the same general meaning and connotation as this term and, thus, when used in food labeling may be construed by consumers to imply that the products on which they appear will be helpful in maintaining healthy dietary practices. Therefore, the agency concludes that it is appropriate to require that **when any of the derivatives of "healthy" are used in a nutritional context in food labeling, their use be in accordance with the definition of "healthy" in § 101.65.**

FDA finds that providing for the use of derivatives of "healthy" in the definition of that term is the logical outgrowth of the proposal. As stated above, USDA proposed this action, and FDA asked in its proposal whether its regulations should be consistent with USDA's. These comments urged that the coverage of the two agency's definitions should be consistent. FDA has concluded that **it is appropriate to include the derivative terms in its**

**definition** because doing so will promote consistent use of these terms in the marketplace on both FDA and USDA regulated products.

Accordingly, **the agency is revising proposed § 101.65(d)(2) to include derivatives of "healthy" in the definition of that term when they are used to characterize the level of a nutrient in a food. The derivatives of "healthy" include, but are not limited to, the terms "health," "healthful," "healthfully," "healthfulness," "healthier," "healthiest," "healthily," and "healthiness."**

8. **A few comments urged FDA to extend the definition of "healthy" to terms like "wholesome," "nutritious," "good for you," and "food for today's diet."** One of these comments further stated that if FDA adopts a stringent definition for "healthy, and fails to apply it to synonymous terms, the food industry might simply replace "healthy" with these other terms.

**While the agency recognizes that terms such as "nutritious," "wholesome," and "good for you" can be implied nutrient content claims when they appear in a nutritional context on a label or in labeling, the agency does not believe that they are necessarily synonymous with "healthy." FDA has concluded, as stated in the general principles final rule (58 FR 2302 at 2375), that it does not have sufficient information to determine whether definitions for the terms mentioned in these comments are needed, and what those definitions should be.** The comments to the "healthy" proposal have not provided the agency with the information that it would need to develop definitions or to establish these terms as synonyms for the term "healthy." **Thus, the agency is not extending the definition of "healthy" to these terms.**

However, the agency advises that **when these terms appear in association with an explicit or implicit nutrient content claim or statement about a nutrient, they will be implied nutrient content claims and subject to the provisions of section 403(r) of the act.** Thus, the use of such claims, if they are not defined by the agency, or if they are not exempted through the "grandfather" provision, would cause the product to be misbranded and subject to regulatory action. **Furthermore, when these terms appear on the label other than in association with an explicit or implicit nutrient content claim or statement about a nutrient, they are subject to regulation under the general misbranding provisions of section 403(a) of the act.** Therefore, if a firm is considering using such terms on its label or in its labeling in a

nutritional context, it should petition FDA to define the term under section 403(r)(2)(A)(i) of the act.

59 Fed. Reg. 24232, 24235–36 (May 10, 1994) (emphasis added).[3]

"FIT" is not a derivative of "healthy." It is, at best, a synonym. Therefore, it is plainly clear that the FDA's definition of "healthy" does not apply to "FIT." Thus, Plaintiffs cannot maintain state law causes of action based upon the allegation that "FIT" violates 21 CFR § 101.65(d)(2). To allow Plaintiffs to proceed with this theory would be to define "FIT" in such a way that the FDA has explicitly chosen not to; Plaintiffs cannot seek to impose the definition in a way that is not identical to federal law. Accordingly, Plaintiffs state law causes of action, premised on the allegation that "FIT" is an impermissible implied nutrient content claim because the Bars do not meet the definition of "healthy," are preempted. Accordingly, the Court **GRANTS** Defendant's motion on this basis.

### 2.   *Misleading Labeling*

The FDCA deems a food as "misbranded" if its labeling "is false or misleading in any particular." 21 U.S.C. § 343(a). "The NLEA's preemption provision of 21 U.S.C. § 343-1(a) does not apply to 21 U.S.C. § 343(a)(1)." *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 U.S. Dist. LEXIS 187694, at *13 (N.D. Cal. Oct. 29, 2019) (citing *Manuel v. Pepsi-Cola Co.*, 2018 U.S. Dist. LEXIS 83404, at *8–9 (S.D.N.Y. May 17, 2018) ("Significant here, the NLEA's preemption provision does not apply to § 343(a), the FDCA's prohibition on false or misleading labeling.")).

So far as the Court can surmise, the FDA has not yet defined "FIT" under regulations pursuant to 21 U.S.C. § 341 and therefore, "has not [] entered the fray" in terms of when such a claim may be misleading. *Chacanaca*, 752 F. Supp. 2d at 1124.

---

[3] The Court takes judicial notice of the FDA's responses to comments to the NLEA pursuant to Federal Rule of Evidence 201(b)(2). *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *see also Nw. Envtl. Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1026–27 (9th Cir. 2008) (taking judicial notice of EPA's statements in its request for comments).

Therefore, Plaintiffs' state law causes of action, asserting that "FIT" is misleading in violation of 21 U.S.C. § 343(a), do not conflict with the NLEA and thus are not preempted.  Accordingly, the Court **DENIES** Defendant's motion in this respect.

**B.    Article III Standing**

Defendant challenges Plaintiffs' Article III standing on multiple grounds.  *See* Doc. No. 9-1 at 6, 11, 16.  "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court there-fore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998)).  "In that event, the suit should be dismissed under Rule 12(b)(1)." *Id.* (first citing *Steel Co.* at 109–10; then citing *Warren*, 328 F.3d at 1140; and then citing *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002)).  To establish Article III standing at the motion to dismiss stage, "[t]he plaintiff must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm coupled with 'a sufficient likelihood that he will again be wronged in a similar way,'" "the injury is 'fairly traceable' to the challenged conduct," and the "injury is 'likely' to be 'redressed by a favorable decision.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

*1.    Injunctive Relief*

In the Ninth Circuit, "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).  However, consumers must still plausibly allege an actual threat of future harm. *See id.*  "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969–70.  "In other cases, the threat of future harm

may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970.

In the Second Circuit, however, there is a growing trend of district courts finding that because "a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, 'there is no danger that they will again be deceived by them.'" *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465–66 (S.D.N.Y. 2020) (quoting *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484(J)(AKT), 2015 U.S. Dist. LEXIS 63464, at *8 (E.D.N.Y. May 14, 2015)). "[P]ast purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate," because "even if plaintiff purchased the [p]roducts again, she would do so 'with exactly the level of information' that she possessed from the outset of this suit, and accordingly would not be deceived or harmed." *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 274–75 (E.D.N.Y. 2021) (quoting *Berni v. Barilla S.P.A.*, 964 F.3d 141, 148 (2d Cir. 2020)).

Plaintiffs point to four paragraphs in the Complaint as satisfying their burden at the pleadings stage. In Paragraph 89, Plaintiffs allege that "Defendant's practices . . . have misled Plaintiffs . . . and will continue to mislead in the future." Compl. ¶ 89. Plaintiffs also assert that "Defendant's violation of the [California] UCL . . . present[s] a continuing threat that Plaintiffs . . . will be deceived into purchasing products . . . ." *Id.* ¶ 90. With respect to their class allegations, Plaintiffs contend that they "will continue to suffer harm as a result of Defendant's unlawful conduct." *Id.* ¶ 75. Finally, Plaintiffs maintain that absent injunctive relief, "Plaintiffs, the California subclass, and the broader public will be irreparably harmed . . . ." *Id.* ¶ 108. None of these paragraphs, individually or taken together, are sufficient to survive dismissal.

Plaintiffs do not allege any likelihood of future harm. Unlike in *Davidson*, Plaintiffs fail to specifically allege an intent to ever purchase one of Defendant's FIT Bars again. Such an explicitly stated intention or desire to purchase in the future is

1   required to demonstrate a concrete injury for standing to seek injunctive relief at the

2   dismissal stage in the Ninth Circuit with respect to UCL, CLRA, and FAL claims.

3          Moreover, in order to demonstrate standing to seek injunctive relief, Plaintiffs must

4   plausibly allege that they will be deceived again.  Plaintiffs do not challenge the veracity

5   of the nutritional facts or ingredients labeling.  Instead, Plaintiffs contend that based on

6   the "FIT" labeling, they believed the Bars were a "healthy option."  Compl. ¶¶ 49, 54, 59.

7   However, unlike in *Davidson*, Plaintiffs are not forced to rely on the accuracy of the

8   "FIT" labeling because they cannot otherwise determine whether the Bars are healthy.  In

9   *Davidson*, the Ninth Circuit specifically noted that the plaintiff adequately pleaded she

10  would face a similar harm in the future because of her "inability to rely on the validity of

11  the information advertised on Kimberly-Clark's wipes despite her desire to purchase truly

12  flushable wipes"; the plaintiff had plausibly alleged she had "no way of determining

13  whether the representation 'flushable' is in fact true."  *Davidson*, 889 F.3d at 971–72.

14  Unlike the plaintiff in *Davidson*, Plaintiffs can ascertain whether Defendant's

15  representation is true: Plaintiffs can check the nutritional facts to see if the Bars were

16  improved.  As such, Plaintiffs cannot plausibly allege they will be misled in the future.

17  Accordingly, the Court **GRANTS** Defendant's motion in this respect.

18          *2.      Standing Regarding Particular Advertising*

19          Defendant also contends that Plaintiffs lack standing to assert claims based on

20  advertising they do not allege they saw or relied upon.  *See* Doc. No. 9-1 at 21.  Plaintiffs

21  in opposition fail to cite to any paragraph in the Complaint wherein any Plaintiff alleges

22  they either saw or relied upon *any* marketing or advertising other than the word "FIT" on

23  the Bars' packaging.  A review of the Complaint reveals that Plaintiffs expressly confine

24  their claims to "observing the word 'FIT' on the label."  *See* Compl. ¶¶ 49, 54, 59.  And

25  Plaintiffs seem to concede the point.  *See* Doc. No. 10 at 24 ("The word 'FIT' is the only

26  claim Plaintiffs challenge and is contained on the front of each package at issue.")

27  (emphasis in original).  Plaintiffs do not allege that they were exposed to "a uniform,

28  widespread deceptive campaign" of marketing and advertising, *see* Doc. No. 10 at 16;

they allege solely that they observed and were misled by the word "FIT" on the FIT Bars' wrapper, *see* Compl. ¶¶ 49, 54, 59.

In both California and New York, "[a] party does not have standing to challenge statements or advertisements that she never saw." *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1197 (N.D. Cal. 2014); *Pappas v. Chipotle Mexican Grill*, No. 16CV612-MMA (JLB), 2016 U.S. Dist. LEXIS 202524, at *15–16 (S.D. Cal. Aug. 31, 2016); *see also Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) ("To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased. Of course, if Plaintiff did not see the website and Facebook page beforehand, he could not have been injured by them."). Accordingly, because Plaintiffs do not plead they saw the following alleged representations, the Court **GRANTS** Defendant's motion as to:

(1) Defendant states on its website about the FIT SNACKS: "We crafted our line of supplements for people who take their health and wellness seriously. From appropriate portions to balanced ingredients, Alani Nu supplements are designed to help you find your strength inside. Fill the gaps in your nutrition, find extra motivation, or even balance your hormones with supplements to assist in fitness and wellness goals";

(2) Defendant states on every box of the Products "SNACKS YOU WON'T FEEL GUILTY ABOUT, FLAVORS YOU'LL LOVE";

(3) Defendant has a marketing campaign that promotes the Products as "Balanced nutrition & superior taste", "You've found a protein bar that fits all your needs", and "Care-free snacking just got better"; and

(4) Defendant bases its marketing campaign on the claim that snacking on the Products is "without guilt". It says on its website when purchasing the Products "indulge your cravings without the guilt. Smart snacking should be care-free and delicious which is why we've come up with a pretty awesome protein bar to fit all your needs. With our traditional flavors like Confetti Cake

and Fruity Cereal, and new flavors like Blueberry Muffin & Chocolate Cake. Trust us, you're going to want one of each."

Compl. ¶¶ 16–19.

### 3. Substantially Similar Products

There is no controlling authority in the Ninth Circuit as to whether a plaintiff can assert claims for products she did not purchase. Some district courts have held that a plaintiff may bring suit for any "substantially similar" products not actually purchased. *See, e.g., Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1083 (N.D. Cal. 2014). Others have concluded that absent economic injury, a plaintiff's claims for products she did not purchase must be either dismissed for lack of standing or addressed at the class certification phase of the case. *See Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 569 (N.D. Cal. 2013). The Court is not persuaded that there was any discernable "majority" in these approaches among the district courts in the Ninth Circuit prior to the conclusion that such a majority existed. *See Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). The Second Circuit, on the other hand, appears to have sanctioned a "sufficiently similar" or "same set of concerns" test at the dismissal stage. *See Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 163 (2d Cir. 2014).

The "substantial" and "sufficient" similarity tests seem wholly inconsistent with the basic concept of standing. The Second Circuit recognized this concern, noting that "[i]n addition to preventing the judiciary from adjudicating generalized grievances better directed to the political branches, [Article III's] standing doctrine's requirements ensure that a plaintiff has a sufficiently personal stake in the outcome of the suit so that the parties are adverse." *Id.* at 159 (internal citations and quotation marks omitted). As one district court has recently explained,

> The standing requirement extends to each claim and each remedy sought. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). The similarity of a product, by itself, says nothing about whether a party suffered an injury

traceable to the allegedly wrongful conduct of another. A plaintiff who is falsely led to buy a product may claim injury resulting from that purchase; the same plaintiff, however, cannot claim injury from similarly false advertising upon which he or she did not injuriously rely (by buying a similar product or otherwise). Article III "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); *see also Blum v. Yaretsky*, 457 U.S. 991, 999, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). Importing a "substantial similarity" test into the principle of standing overlooks this point and invites an analysis that is both difficult to apply and unrelated to its objective.

"That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis*, 518 U.S. at 357 (internal citations omitted).

*Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908-09 (C.D. Cal. 2021).

It is entirely unclear which Bars each named Plaintiff purchased. It seems as though Plaintiffs may have purchased all six. *See* Compl. ¶¶ 48, 53, 58. Nonetheless, it appears that all six FIT Bars are identical in terms of labeling and relevant nutritional composition and therefore, all six satisfy both the substantially similar and sufficiently similar tests. Accordingly, the Court **DENIES** Defendant's motion on this basis.

### 4. Nationwide Class Allegations

Defendant asks the Court to strike Plaintiffs' nationwide class allegations pursuant to Rule 12(f). *See* Doc. No. 9-1 at 31. Plaintiffs argue that conflict of law principles do not preclude nationwide class allegations and that the issue should be reserved for the class certification stage. *See* Doc. No. 10 at 29–30.

Although Defendant's motion is styled as one under Rule 12(f), Defendant's primary argument is that Plaintiffs lack standing to bring claims under the laws of states in which they do not reside and have no connection. *See* Doc. No. 9-1 at 32. Whether in the context of Rule 12(b)(1), 12(b)(6), or 12(f), many courts have addressed a plaintiff's

standing to assert nationwide class allegations at the dismissal stage.  *See, e.g.*, *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020); *Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421-SB-PLA, 2020 U.S. Dist. LEXIS 227197, at *9 (C.D. Cal. Nov. 23, 2020).  The decision to address questions of standing before or during class certification is a discretionary one—"there is no hard and fast rule to apply."  *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1124 (N.D. Cal. 2021) (internal quotations marks omitted) (quoting *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017)).  And in fact, there is a growing trend in district courts to address issues of Article III standing prior to class certification.  *See Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1072 (S.D. Cal. 2020) (collecting cases); *Stewart v. Kodiak Cakes*, LLC, 537 F. Supp. 3d 1103, 1125 (S.D. Cal. 2021) (collecting cases); *Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421-SB-PLA, 2020 U.S. Dist. LEXIS 227197, at *7 (C.D. Cal. Nov. 23, 2020) ("Courts in this circuit have overwhelmingly ruled that plaintiffs "do not have standing to assert claims from states in which they do not reside and that it is appropriate. . . to address standing in advance of class certification.") (internal citation marks omitted) (collecting cases).  Following *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004), California district courts frequently address the issue of Article III standing at the pleading stage and dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products.  *See, e.g.*, *Morales v. Unilever U.S., Inc.*, Civ. No. 2:13-2213 WBS EFB, 2014 U.S. Dist. LEXIS 49336, at *15 (E.D. Cal. Apr. 9, 2014) (holding that because the named plaintiffs were only residents of two states and did not purchase defendant's products in any state but their own they did "not have standing to assert a claim under the consumer protection laws of the other states named in the Complaint") (quoting *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013)); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. May 11, 2007) (holding that "[a]t least one named plaintiff must have standing with respect to each claim the class representative seek to bring" and dismissing the claims made under the laws of twenty-four states where none

of the named plaintiffs resided or were alleged to have personally purchased the product); *see also Carpenter*, 441 F. Supp. 3d at 1039 (collecting cases).

"That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976)). "[S]tanding is not dispensed in gross." *Id.* at 358 n.6. It "is claim-specific and 'a plaintiff must demonstrate standing for each claim he seeks to press.'"" *Harris v. CVS Pharmacy, Inc.*, No. EDCV1302329ABAGRX, 2015 U.S. Dist. LEXIS 104101, at *10 (C.D. Cal. Aug. 6, 2015) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)); *see also Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2014 U.S. Dist. LEXIS 133540, at *14 (N.D. Cal. Sept. 22, 2014) ("If a complaint includes multiple claims, at least one named class representative must have Article III standing to raise each claim.") (citation and quotation marks omitted).

According to the Complaint, Plaintiffs seek to assert breach of express warranty and unjust enrichment claims on behalf of a nationwide class of FIT Bars purchasers. Compl. at 33–34. The nationwide class is defined as "all persons in the United States who purchased any of the Products for their personal use and not for resale within the United States." Compl. ¶ 63.

As an initial matter, as will be discussed below, Plaintiffs fail to allege any state law supporting these two claims and therefore both are subject to dismissal. Plaintiffs acknowledge that they must identify state law providing for breach of warranty and unjust enrichment claims. *See* Doc. No. 10 at 26–27. Plaintiffs also agree that this Court must apply California's conflict of law rules, which generally requires the Court to apply the substantive law of the state where a transaction took place. *See id.* at 29. As Plaintiffs note, the Court is "perfectly competent to apply conflict of law principles, discern the substantive law to be applied, and apply it." Doc. No. 10 at 30. However,

Plaintiffs are from New York and California and therefore there are no other state laws to apply.  What Plaintiffs are attempting to do here is assert fifty breach of express warranty claims and fifty unjust enrichment claims–one of each claim for each state—on behalf of fifty separate state-specific classes, when they only have standing under two.  *See Carpenter*, 441 F. Supp. 3d at 1039.

It is well within the Court's discretion to strike or dismiss Plaintiffs' nationwide class allegations at the pleadings stage rather than at class certification.  There is significant risk of wasted effort and resources by the Court and the parties should Plaintiffs be permitted to proceed to class discovery with a putative nationwide class, when Plaintiffs can only plead California and New York state law claims.  There is simply nothing of legal substance to permit such a putative class to proceed.  There are no claims that would apply to a nationwide class.  It is neither prudent nor necessary to defer until class certification.  *Cf. Jones v. Micron Tech. Inc., 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019)* (discussing *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015)); *see also Carpenter*, 441 F. Supp. 3d at 1040–41.

In sum, this is not a conflict of law or Rule 23(a) issue, it is an Article III standing issue.  The question here is whether Plaintiffs have standing to hypothetically assert claims on behalf of unnamed class members under potentially forty-eight (48) other states' laws that do not govern their own claims.  They do not.  Accordingly, the Court **GRANTS** Defendant's motion on this basis.

## C.   **Rule 9(b) Particularity**

As noted above, all seven of Plaintiffs' claims sound in fraud: they are all premised upon the allegation that FIT Bars mislead consumers to believe the product is healthy, *see, e.g.*, Compl. ¶¶ 80, 98, 107, 114, 134, 151, 159, and as such, all are subject to Rule 9(b)'s heightened pleading standard.  In order to satisfy Rule 9(b), Plaintiffs must plead the "who, what, when, where, and how of the misconduct charged." *Kearns*, 567 F.3d at 1124.

Plaintiffs plead that Defendant represents that six Bars are "FIT."  S*ee* Compl. ¶ 36–41, 49, 54, 59.  They allege that "FIT" is a synonym of "healthy," *see id.* ¶29, and therefore that the label conveys to the reasonable consumer that the Bars are healthy, *see id.* ¶ 33.  According to Plaintiffs, FIT Bars are not healthy because they contain more than three (3) grams of fat.[4]  *See id.* ¶ 34.  Plaintiffs claim that they each relied upon this alleged misrepresentation when they purchased FIT Bars and that they would not have purchased them, or would have paid less, if they knew the products were not healthy.  *See id.* ¶¶ 49, 51, 54, 56, 59, 61.  Each Plaintiff identifies a general timeframe they purchased the products: 2018 through 2020 for Plaintiff Vitiosus, *see id.* ¶ 48; July 29, 2021 for Plaintiff Foley, *see id.* ¶ 53; and January, February, and May 2021 for Plaintiff Lumbra, *see id.* ¶ 58.  These allegations satisfy Rule 9(b) under both California and New York law.  *See Rana v. Islam*, 305 F.R.D. 53, 58 (S.D.N.Y.2015) ("To satisfy Rule 9(b), a plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based."); *Stewart*, 537 F. Supp. 3d at 1134 (collecting cases).  Accordingly, the Court **DENIES** Defendant's motion on this basis.

**D.    Consumer Protection Claims**

Plaintiffs bring five consumer protection claims under the following California and New York laws: (1) California's CLRA; (2) California's FAL; (3) California's UCL; (4) New York's GBL § 349; and (5) New York's GBL § 350.  Defendant argues that all five are subject to dismissal because Plaintiffs do not plausibly plead that the reasonable consumer would be misled by the word "FIT" for various reasons.  *See* Doc. No. 9-1 at 12–15.  The Court begins by discussing those laws and then turns to the reasonable consumer test.

---

[4] To the extent Plaintiffs allege that "protein benefits," *see* Compl. ¶ 49, and weight loss, *see id.* ¶¶ 54, 59, are "how" they were misled, those allegations are not viable for the reasons discussed *infra* Part III.D.3.c.

1        *1.      California Consumer Protection Laws*

2            The CLRA prohibits "unfair methods of competition and unfair or deceptive acts

3    or practices undertaken by any person in a transaction intended to result or that results in

4    the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a); *see*

5    *also id.* § 1760.  Specifically, the CLRA prohibits, among other things, "[r]epresenting

6    that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities

7    that they do not have"; "[r]epresenting that goods or services are of a particular standard,

8    quality, or grade, or that goods are of a particular style or model, if they are of another";

9    "[a]dvertising goods or services with intent not to sell them as advertised"; and

10   "[r]epresenting that the subject of a transaction has been supplied in accordance with a

11   previous representation when it has not."  *Id.* § 1770(a)(5), (7), (9), (16).

12           The FAL prohibits unfair, deceptive, untrue, or misleading advertising, in

13   particular, the FAL forbids the dissemination of any statement concerning property or

14   services for sale that "is untrue or misleading, and which is known, or which by the

15   exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. &

16   Prof. Code § 17500.

17           The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and

18   unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

19   The UCL provides a separate theory of liability under each of the three prongs:

20   "unlawful," "unfair," and "fraudulent."  *See Cel-Tech Commc'ns, Inc. v. Los Angeles*

21   *Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548, 560 (Cal. 1999) (quoting *Podolsky v. First*

22   *Healthcare Corp.*, 58 Cal. Rptr. 2d 89, 98 (1996)) ("Because Business and Professions

23   Code section 17200 is written in the disjunctive, it establishes three varieties of unfair

24   competition—acts or practices which are unlawful, or unfair, or fraudulent."); *see also*

25   *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (same).

26   Plaintiffs plead their UCL cause of action pursuant to all three prongs.  *See* Compl. ¶¶ 80,

27   83, 85.

28

1

2. *New York Consumer Protection Laws*

2

New York's GBL §§ 349 and 350 prohibit "[d]eceptive acts or practices in the

3

conduct of any business, trade, or commerce or in the furnishing of any service in this

4

state" and materially misleading advertising, respectively.  GBL §§ 349(a), 350.  To state

5

a claim under GBL § 349, a plaintiff must plead "that a defendant has engaged in

6

(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff

7

suffered injury as a result of the allegedly deceptive act or practice."  *Koch v. Acker,*

8

*Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012).

9

While GBL § 350 relates specifically to false advertising, "the standard for

10

recovery under § 350 . . . is otherwise identical to section 349."  *Goshen v. Mut. Life Ins.*

11

*Co. Of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002); *see also Koch v. Greenberg*, 14 F. Supp. 3d

12

247, 261 (S.D.N.Y. 2014) (noting that a claim under GBL § 350 has the additional

13

requirement that it relate to false advertising) (citing *Andre Strishak & Associates, P.C. v.*

14

*Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (2d Dept. 2002)), *aff'd*, 626 F. App'x 335

15

(2d Cir. 2015) (summ. order).  "False advertising" is defined by the GBL as "advertising,

16

including labeling."  GBL § 350-a.  A Plaintiff need not prove reliance on the alleged

17

false advertising under GBL §§ 349 and 350.  *See* Koch, 18 N.Y.3d at 941 ("To the

18

extent that the Appellate Division order imposed a reliance requirement on General

19

Business Law §§ 349 and 350 claims, it was error. Justifiable reliance by the plaintiff is

20

not an element of the statutory claim."); *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-

21

7061 (NSR), 2017 U.S. Dist. LEXIS 204828, at *8 (S.D.N.Y. Dec. 12, 2017) ("[T] the

22

New York Court of Appeals has explicitly rejected reliance as a requirement for GBL

23

§§ 349 and 350 claims.").

24

3. *Reasonable Consumer Test*

25

The reasonable consumer test governs both California and New York state law

26

consumer protection claims.  *See Pappas*, 2016 U.S. Dist. LEXIS 202524, at *11

27

(applying the reasonable consumer standard to FAL, UCL, and CLRA claims); *see also*

28

*Housey v. P&G*, 21 Civ. 2286 (NRB), 2022 U.S. Dist. LEXIS 53603, at *6 (S.D.N.Y.

Mar. 24, 2022) (applying the reasonable consumer standard to claims under sections 349 and 50 of New York's General Business Law). In order to survive dismissal, a plaintiff must plausibly plead that the ordinary consumer, acting reasonably under the circumstances, is likely to be deceived by the representations in question. *See Pappas*, 2016 U.S. Dist. LEXIS 202524, at \*11; *Goldemberg*, 8 F. Supp. 3d at 478.

In both California and New York, whether a representation would mislead the reasonable consumer is a factual inquiry often inappropriate for Rule 12(b)(6) dismissal. *See Pappas*, 2016 U.S. Dist. LEXIS 202524, at \*12; *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 237 (S.D.N.Y. 2021) (collecting cases). However, in some cases dismissal is appropriate where the allegations are implausible, *see Pappas*, 2016 U.S. Dist. LEXIS 202524, at \*18; *Barton*, 535 F. Supp. 3d at 238, or where the advertisements merely amount to puffery, *see Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003); *see also Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 347 (S.D.N.Y. 2020).

### a.   Brand Name

Defendant argues that "FIT" is part of the brand name "FIT SNACKS" and thus cannot mislead the reasonable consumer. *See* Doc. No. 9-1 at 23. There is no authority under either California or New York law standing for the proposition that a brand name cannot, as a matter of law, mislead a consumer.[5] To the contrary, federal courts in both states have rejected such an argument. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020) ("[B]rand names by themselves can be misleading in the context of the product being marketed."); *see also Mustakis v. Chattem, Inc.*, No. 20-CV-5895 (GRB)(AYS), 2022 U.S. Dist. LEXIS 45070, at \*8 (E.D.N.Y. Mar. 9, 2022) (first citing *Paulino v. Conopco, Inc.*, 2015 U.S. Dist. LEXIS 108165, at \*10 (E.D.N.Y. 2015);

---

[5] The Court in *Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033-H (DHB), 2012 U.S. Dist. LEXIS 58710, at \*11 (S.D. Cal. Apr. 16, 2012) did not conclude that "Sugar in the Raw" was nonactionable because it is a brand name, but instead because the allegation did not plausibly meet the reasonable consumer test.

and then citing *Goldemberg*, 8 F. Supp 3d at 471–72).  Therefore, the Court **DENIES** Defendant's motion on this basis.

### b.  Puffery

In both California and New York, puffery is not actionable for false advertising claims.  *See, e.g.*, *Knowles v. ARRIS Int'l PLC*, 847 F. App'x 512, 513 (9th Cir. 2021) (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990); *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) (citing *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994)).  The standard for what constitutes puffery is essentially the same under California and New York law.  Subjective, generalized, vague, and unspecified assertions that cannot be proven true or false constitute "mere puffery upon which a reasonable consumer could not rely," and thus are not actionable under the false advertisement prongs of the UCL, FAL, CLRA, or GBL.  *Glen Holly Entm't*, 343 F.3d at 1005; *see also Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007); *Duran*, 450 F. Supp. 3d at 347.

Defendant argues that "FIT" is a generalized, subjective, non-measurable term that conveys no specific information about the product's characteristics and thus is merely puffery.  *See* Doc. No. 9-1 at 23.  Keeping in mind that in both California and New York, courts should "ordinarily refrain from resolving questions of reasonableness on a motion to dismiss," *George v. Starbucks Corp.*, 857 F. App'x 705, 706–07 (2d Cir. 2021); *see also Grausz v. Kroger Co.*, No. 19-CV-449 JLS (AGS), 2020 U.S. Dist. LEXIS 260667, at *19 (S.D. Cal. Mar. 3, 2020), the Court **DENIES** Defendant's motion on this basis.  The Court cannot conclude, as a matter of law, that no reasonable consumer could read the word "FIT" and believe the Bars were healthy.

### c.  Weight Loss & Protein Benefits

Plaintiffs' allegations regarding weight loss and protein benefits are untenable.  *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) ("[I]t remains the case that 'where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be

justified.'") (quoting *Bell v. Publix Super Markets Inc*, 982 F.3d 468, 477 (7th Cir. 2020)).  Plaintiff Vitiosus claims that he purchased FIT Bars "believing it to be a healthy option *and for the protein benefits*."  Compl. ¶ 49 (emphasis added).  Plaintiffs Foley and Lumbra assert identically that they purchased FIT Bars "believing it to be a healthy option *that would help [them] lose weight*."  *Id.* ¶¶ 54, 59 (emphasis added).  However, the Complaint is devoid of any allegations that FIT Bars do not have "protein benefits," *id.* ¶ 49, or did not "help [them] lose weight," *id.* ¶¶ 54, 59.

Moreover, the word "FIT" does not convey anything specific or measurable to the reasonable consumer regarding protein and weight loss.  As noted above, Plaintiffs do not maintain any defect in the Bars' ingredients labeling and as such there is no dispute that the FIT Bars' ingredients and thus nutritional benefits, or lack thereof, were actually and fully disclosed.  There is simply no deception in the word "FIT" regarding the Bars' protein or weight loss benefits such that Plaintiffs can plausibly plead the reasonable consumer would be deceived in these respects.

Further, no reasonable consumer, on notice of the actual ingredients described on the packaging, could reasonably or plausibly believe that eating a protein bar would help them lose weight merely because the bar is named "FIT SNACKS."  The Court must consider the term "FIT" in its context.  Courts have found words more closely related to weight loss implausible.  *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019); *Geffner*, 928 F.3d at 200.

Plaintiffs seemingly concede these points, as their opposition is largely devoid of any mention of the weight loss and protein allegations.  Accordingly, the Court **GRANTS** Defendant's motion in this respect.

        d.    Nutrition Facts

Defendant also argues that no reasonable consumer could be misled by the word "FIT" because the Nutrition Facts on the wrapper fully and clearly disclose the fat, nutrient content, as well as calories.  *See* Doc. No. 9-1 at 25.

The Ninth Circuit has stated that while "qualifiers in packaging, usually on the back of a label or in ingredient lists, can ameliorate any tendency of the label to mislead . . ." a "back label ingredients list" that conflicts with, rather than confirms, the front label does not defeat a false advertising claim. *Moore*, 966 F.3d at 1017. The Second Circuit has come to a similar conclusion applying New York law. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 639 (2d Cir. 2018). Neither state employs a bright line rule that consumers *must* look beyond misleading representations on the front of a product's packaging to discover the truth. *See Mantikas*, 910 F.3d at 637; *Moore*, 966 F.3d at 1017. However, under California law, only "*if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (emphasis in original). In New York, "context is crucial," and the question turns on whether the Nutrition Facts "cures" the deceptive quality of the representation. *See Mantikas*, 910 F.3d at 637.

As discussed above, Plaintiffs plausibly plead that the term "FIT" is misleading as it falsely conveys to the reasonable consumer that FIT Bars are healthy. Taking this allegation as true, any accurate information on the back is either unable (under California law) or insufficient (under New York law) to cure or dispel such a misrepresentation. Accordingly, the Court **DENIES** Defendant's motion on this basis.

**E.      Breach of Express Warranty & Unjust Enrichment**

Plaintiffs fail to identify any state law providing for breach of express warranty or unjust enrichment causes of action, a defect they concede. *See* Doc. No. 10 at 26–27. Accordingly, the Court **GRANTS** Defendant's motion in this respect. *See Augustine v. Talking Rain Bev. Co.*, 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019) (dismissing common law claims for fraud, negligent misrepresentation, and breach of express and implied warranties for failure to allege the applicable law). Because Plaintiffs do not plead any applicable law, the Court does not address Defendant's remaining arguments, challenging the claims under California and New York law.

# IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss **IN PART**. In particular, the Court **DISMISSES** Plaintiffs' sixth and seventh causes of action with leave to amend. The Court **DISMISSES** Plaintiffs' claims to the extent they are premised upon advertising they do not allege they saw with leave to amend. The Court further **DISMISSES** the following **without leave to amend**: Plaintiffs' request for injunctive relief; Plaintiffs' claims to the extent they are premised upon the implied nutrient content claim theory; Plaintiffs' claims to the extent they are based upon weight loss and protein benefits beliefs; and Plaintiffs' nationwide class allegations. The Court's ruling as to the nationwide class allegations is without prejudice to additional Plaintiff(s) bringing claims, and thus representing additional class(es), under the laws of their respective states. The Court **DENIES** the remainder of Defendant's motion.

If Plaintiffs wish to file a First Amended Complaint curing the deficiencies noted herein, they must do so on or before **July 25, 2022**. Defendant must then respond within the time prescribed by Rule 15.

**IT IS SO ORDERED**.

Dated: July 5, 2022

HON. MICHAEL M. ANELLO
United States District Judge